# Biddle's Appeal.

1. A testator gave the residue of his estate to his executors in trust to pay the net income to his wife, " so long as she shall remain my widow and my children shall be under age, to be used and applied by her to the maintenance, support and education of my children who may be under age, but without being called upon to give any account of the manner in which she may have applied it, as it is my wish that she shall have the absolute control of *its* use and disposition so long as she shall remain my widow :" *Held*, that this did not create a sub-trust in the wife, but was only an expression of confidence in her as to the use and disposition of the income.

2. The income was to be paid to her without legal responsibility for its use and disposition, with absolute control and without being ·called to give any account of her application of it.

3. The wife could not be called to account unless she should be guilty of malversation.

January 5th 1876.    Before AGNEW, C. J., SHARSWOOD, MERCUR, GORDON, PAXSON and WOODWARD, JJ.

Appeals from the Orphans' Court of *Philadelphia :* Of July Term 1873, No. 152 and No. 153.

The question in this case was as to the proper construction of

the will of Henry J. Biddle, who died about August 1862; his will was dated January 15th 1862.

Amongst the provisions of the will were the following:—

"2d. I give and bequeath to my dear wife, Mary D. Biddle, all my books, plate, plated ware, pictures, prints, linen, china, glass, household and kitchen furniture, and all articles which may have been provided for domestic use and consumption, whatsoever and wheresoever they may be.

"3d. I also give, devise and bequeath unto my said wife, Mary D. Biddle, her heirs, executors, administrators and assigns, one full equal third part of all the rest, residue and remainder of my whole estate, real and personal, whatsoever and wheresoever the same may be; and I will and direct that the provisions hereinbefore made for my said wife, shall be, and be accepted by her in lieu and in full satisfaction of all dower, thirds, or distributive share of my estate, which she might claim or be entitled to by law or otherwise, from or out of my estate.

"4th. I give, devise and bequeath all the rest, residue and remainder of my whole estate, real and personal, whatsoever and wheresoever the same may be, after paying and satisfying the previous bequests and devises unto my executors hereinafter named, and the survivors and survivor of them, and the heirs, executors, administrators and assigns of such survivor, in, for, and upon the following trusts, intents, uses and purposes, and in, for, and upon no other trust, intent use or purpose whatsoever, that is to say:—

"1. In trust to receive and collect the whole interest, dividends, rents and income thereof, and after paying and discharging all necessary repairs, taxes, costs, charges and expenses, then to pay over the whole net income thereof unto my said wife, Mary D. Biddle, so long as she shall remain my widow, and my children shall be under age, to be used and applied by her to the maintenance, support and education of my children who may be under age, but without being called upon to give any account of the manner in which she may have applied it; as it is my wish that she shall have the absolute control of its use and disposition so long as she shall remain my widow.

"2. And upon this further trust, when, and as soon as my children shall respectively and successively become of full age, then to pay to each of them until they shall severally and respectively attain the age of twenty-five years, one equal share or proportion of the whole income of my residuary trust estate, in the hands of my executors, having in ascertaining the amount of such equal share, reference to the number of my children then living, and to the issue of any of them who may then be dead; the issue in all cases only taking their parent's share.

"3. And upon this further trust, when, and as soon as any of my said children, or the issue of any deceased child, shall attain the

full age of twenty-five years, then to assign, transfer and pay over to him or to her so arriving at the age of twenty-five years, the one equal share or proportion of the whole trust estate in the hands of my executors, to be held by each of my said children, and the issue of any deceased child, his or her heirs, executors, administrators and assigns, for his and their sole use and behoof. The division and appraisement of my estate for the purpose of ascertaining their several shares and proportions thereof, as they shall respectively become of the age of twenty-five years, shall be made by my executors or executor for the time being, and shall be final and absolutely conclusive upon all parties in interest, without any liability or responsibility for any error of judgment in the making thereof."

There were two other paragraphs under this 4th clause of the will not necessary to state.

The testator appointed his wife, Mary D. Biddle, so long as she should remain his widow, and no longer, William M. Baird (since deceased) and Alexander Biddle, the testamentary guardians of the persons and estates of his children. He appointed her (for the same time), and W. M. Baird and A. Biddle, executors, &c., of his will. He left five children, namely, J. Williams Biddle, Lydia M. Biddle, Spencer F. B. Biddle, Christine W. Biddle and Henry J. Biddle, the oldest, at the time of testator's death, being seven years old and the youngest three months.

The executors having settled their account it was referred to Edward Olmsted, Esq., as auditor to examine, &c., and report distribution. The account covered a period of seven years from 1865 to 1872. The income of the two-thirds of the residue of the estate received in trust under the 4th clause of the will during that time amounted to $143,632.17. Mrs. Biddle claimed that she was entitled, under the first paragraph of that clause, to receive all that sum, out of which she was to support the testator's children, and was entitled to retain any balance that might remain, without accounting for it.

The other trustee, A. Biddle, claimed that such balance must be invested for the benefit of the children; that Mrs. Biddle had no beneficial interest in the income and especially in any unexpended surplus of income not needed for the maintenance and education of the children.

The auditor, after discussing the provisions of the will and referring to the authorities, said : * * *

"The plain gift in the first part of the will cannot be revoked by mere implication. It must be by unequivocal language. No language of this kind is to be found in the part of the will where the guardians are named. Indeed this is not contended. But it is argued, that as the office of guardian has attached to it certain duties, and these duties cannot be performed, if Mrs. Biddle has a

beneficial interest in the fund appointed for the maintenance of the children, as is claimed by her, and if she cannot be called to account that then the will must be so construed as to repel the presumption of a gift, and the freedom from accounting.

"The guardian of minors has the right to the custody of the wards' estate, and to its management; and to regulate the expense of maintenance and education. But a testator who has the right to appoint testamentary guardians, may limit their power, and abridge their responsibilities ; and this Mr. Biddle has done.

"The auditor is of opinion that Mrs. Biddle is entitled to receive from the trustees the whole of the net income of two-thirds of the testator's estate, and that she is entitled to apply to her own use, and as the owner thereof, any surplus that may remain after providing for the maintenance and education of the children of the testator."

Exceptions were filed by Alexander Biddle, the other trustee.

The exceptions were dismissed and the report confirmed by the ·Orphans' Court, PAXSON, J., delivering the opinion, to wit :—

"This case comes up upon exceptions to the report of the auditor. The testator died in 1862. By his will he devised and bequeathed to his wife, Mary D. Biddle, one-third part of the residue of his estate, and the remainder of the residue to his executors, in trust to collect and receive the income, and pay the net income thereof to his said wife, ' so long as she shall remain my widow, and my children shall be under age, to be used and applied by her to the maintenance, support and education of my children, who may be under age, but without being called upon to give any account of the manner in which she may have applied it; as it is my wish that she shall have the absolute control of its use and disposition as long as she shall remain my widow,' &c.

"The testator nominated his wife so long as she remained his widow, and no longer, executrix of his will, and one of the guardians of the persons and estates of his children; he also nominated his brother, Alexander Biddle, and his brother-in-law, William M. Baird, executors and guardians of the persons and estates of his children with his wife during her widowhood, and sole guardians and executors on her second marriage.

"The income of Mr. Biddle's estate at the time of his death, was about ten thousand dollars per year. It has since greatly increased in value, and now yields an income of about thirty thousand dollars. Of this sum, one third belongs to the widow absolutely in her own right. The remainder, about twenty thousand dollars per annum, by the terms of this will, is payable to the widow, to be used and applied by her, as before stated, to the maintenance, support and education of the children. The auditor has awarded her the whole income of the estate. To his decision the other executors except, upon the ground, that the widow is

[Biddle's Appeal.]

but a trustee for the minor children as to the two-thirds of the income, and that inasmuch as the two-thirds is more than sufficient to cover any proper expenditure for said children, the surplus should be set apart, and invested for the use of said minors.

"The widow, on the other hand, asserts, that she takes a beneficial interest under the will as to the two-thirds, and is entitled to have the same paid to her, without any liability to account therefor.

"The testator left five children, all of whom are still living, the oldest being now about seventeen years of age.

"They reside with their mother, and have all the advantages which are proper for their estate and condition in life. It does not appear that Mrs. Biddle has failed in any respect to perform her whole duty to said minors. Not a word was said upon the argument, to induce us to suppose that the large trust reposed in her by her husband has been misplaced.

"It is not claimed by the exceptants, that they have a right to call upon the widow for details of her management and expenditures for the children. They merely insist that a sum liberal and ample should be set apart for their support, and the balance invested. It is urged in support of this view, that the testator could not have supposed when he made his will, that his estate would yield so large an income.

"It is sufficient answer to this, to say that this testator gave to his widow an absolute discretion as to the expenditure of the said two-thirds of the income. So great was his confidence in her, that he says she shall not be called upon for any account; and that it is his wish that she shall have the absolute control and disposition of it. It is true, that he may not have anticipated such an increase in the value of his estate. But he probably knew that it was subject to fluctuations. He did not see proper to impose any limitation upon Mrs. Biddle's discretion. We will not do so in the absence of any allegation that she is abusing it. To enable us properly to control her discretion, if we have the right to do so, it must be alleged and proved that she is not exercising it in a proper manner.

"I have not touched the question as to whether the widow is entitled to a beneficial interest in the two-thirds of the income. Upon this point the auditor says:—

'"'The auditor is of the opinion that Mrs. Biddle is entitled to receive from the trustees the whole of the net income of two-thirds of the testator's estate, and that she is entitled to apply to her own use, and as the owner thereof, any surplus that may remain, after providing for the education and maintenance of the children of the testator.'

"A number of cases are cited by the learned auditor in support of this view. The most important of which are Brown *v.* Paull,

Simons N. S. 92 (1850); Hadow *v.* Hadow, 9 Simons 438; Berkeley *v.* Swinburne, 6 Id. 613; Byne *v.* Blackburn, 26 Beav. 41 (1858).

"I do not now decide the broad principle as stated by the auditor. It is not necessary for the purposes of this case. I do not desire to prejudge the rights of these minor children upon their respective arrival at majority ; all I decide is, that the said two-thirds of the income of the estate should be paid over to the widow, under the terms of her husband's will. Subject to this modification of the views expressed by the auditor, the exceptions are dismissed, and his report is confirmed."

Afterwards Alexander Biddle, as one of the testamentary guardians of the testator's children, presented a petition to the Orphans' Court, setting forth the will, and other facts as before stated.

He further set forth, that the income received by Mrs. Biddle was far in excess of the amount required for the support, maintenance and education of the children and of the amount actually expended by her for that purpose and that no part of such surplus had been invested in trust for the children ; that he was advised that under the fourth clause of the will a trust for the children was created as to any such surplus.

He prayed for a citation to Mrs. Biddle as testamentary guardian requiring her " to appear and answer this petition, and to make a full and complete statement, so far as she may be able to do so, of the amount of surplus income received from said trust estate, and not expended by her for the maintenance, support and education of her said children, and to set forth how the same is now invested, whether in her individual name or otherwise, and to do and perform all such matters and things as to your honors shall seem meet, &c."

On the 2d of June 1873, the Orphans' Court (Ludlow, J.) refused the citation, saying : " On consultation, we are of opinion that this case has been decided."

Alexander Biddle appealed to the Supreme Court from each decree and assigned the decrees for error.

*G. M. Conarroe* and *G. W. Biddle,* for appellant.—The children had a right under the fourth clause of the will to call their guardian to account : Jubber *v.* Jubber, 9 Simons 503 ; Raikes *v.* Ward, 1 Hare 445 ; Crockett *v.* Crockett, Id. 451 ; Thorp *v.* Owen, 2 Id. 612 ; Cole *v.* Littlefield, 35 Maine 439 ; Chase *v.* Chase, 2 Allen 101 ; Loring *v.* Loring, 100 Mass. 340.

*E. S. Miller,* for appellee, cited Paisley's Appeal, 20 P. F. Smith 158 ; Lambe *v.* Eames, 6 Ch. App. Cases 597.

Judgment was entered in the Supreme Court, January 17th 1876,

PER CURIAM.—The *fourth item of the* will of Henry J. Biddle creates a trust of the residue of his estate, the purposes of which are expressed in the five clauses immediately following : The first clause expresses the first purpose, viz., to pay over the whole net income thereof to his wife, Mary D. Biddle, *so long as she shall remain his widow, and his children shall be under age,* to be used and applied by her to the maintenance, support and education of his children *who may be under age,* but without being called upon to give *any* account of the manner in which she may have applied it, as it is his wish that she shall have the *absolute* control of its *use and disposition* so long as she remains his widow. We are of the opinion, this created no *sub*-trust, but was purely the expression of a confidence in Mrs. Biddle, as to the use and disposition of the income to be paid to her. The created trust lay in those who were made trustees, to collect and pay over to her. When paid to her, the testator reposed a confidence in her that she would use it as her personal qualities (which he knew) and a mother's affection and kindness would dictate, so long as no other ties interfered, and while their common offspring remained under tutelage. During this time, he had no reason to doubt that she would be the head of her family, and the kind mother and the painstaking friend of her children. His intent was, therefore, that the *income should be paid over to her without legal responsibility* as to its use and disposition, giving to her the absolute control of this use and disposition, without being called upon to give *any* account of the manner in which she might have applied it. But the time and the circumstances of this confidence were limited. It was during widowhood, when no adverse interest or hostile influence should counteract his beneficent intentions towards his children. It was only during minority, for the clauses following provide for the payment of income, and finally, the principal to the children themselves. The sub-trust now asserted is founded upon the absence of those qualities which the testator believed belonged to his wife, and upon her unnatural and selfish disregard of the interests of her own offspring. It is inconsistent, also, with exemption from liability to be called upon to give *any* account of the *manner* in which she shall have applied the income, and the *absolute* control of its *use* and *disposition* conferred upon her. All that was confided to her was necessarily involved in the use and disposition of the income, and over this her power was absolute without accountability for the manner of its exercise. If we say she shall account, even in the qualified manner contended for; that is to say, to state under oath, what sum has not been expended, this necessarily interferes with her absolute power to control the use and disposition. It may not *now* be expended, and it may be invested in securities in her *own* name ; for in this mode alone can she retain the power to use and dispose of the fund ; but what she

shall in the future do with it, and how dispose of it for the best interests of her family, are a part of the discretion she has a right to exercise, and if we demand of her this residue because it is at this moment a surplus, we cut off her power to use and dispose of it hereafter, the very thing the testator conferred upon her.  To demand an account at all, is necessarily to conflict with the purpose of the will, which was to leave her free to do as her judgment and affection would dictate.  But it is said, she might abuse the confidence of the testator without remedy, under this construction.  Not so.  An utter perversion of the trust fund and no attempt to fulfil his confidence, stands on a different footing.  But here there is no averment that she has failed to perform the duties to her children the confidence placed in her would dictate.  She has not wasted and mismanaged the income.  Circumstances have produced a surplus, and this surplus the petition avers she is holding for herself, and investing in her own name.  But *non constat*, that the same qualities which invited the confidence of her husband, will not in the end result to the benefit of her children.  Suffice it, however, to say, that the teststor has said in the most solemn act of his life, " I trust her fully, completely, absolutely, and I will that she be not called to an account."

In this view, it will be seen that the provision made for Mrs. Biddle in the second and third items of the will, are not in conflict with the first clause of the fourth item ; unless we assume, which we have no right to do, that she has been guilty of a perversion of the confidence.  This can arise only from malversation, and the petition does not, and it is to be presumed cannot, allege this.

Decrees of the Orphans' Court affirmed, with costs and the appeals dismissed in both cases.