INDUSTRIAL TRUST COMPANY, *Tr. vs.* AUSTIN J. NOLAN *et al.*

JULY 12, 1939.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

CONDON, J. This is a bill in equity for the construction of a will. After the filing of the bill and answers in the superior court and the taking of evidence, the cause being ready for hearing for final decree, that court certified the cause to this court for construction of the will in accordance with general laws 1923, chapter 339, sec. 35.

The following facts appear from the record. Michael Nolan died testate on February 19, 1931 and his will was duly admitted to probate in the probate court of the city of Pawtucket.. He left surviving him his daughter-in-law, Honora Nolan, and two grandsons, Austin J. Nolan and Richard M. Nolan, children of the said Honora and Joseph P. A. Nolan, testator's son, who predeceased him in July 1929. Honora Nolan deceased on June 30, 1932.

Gerald J. Martin, brother of Honora Nolan, is the duly appointed guardian of Austin J. and Richard M. Nolan, and also their adoptive father. In this proceeding a guardian *ad litem* was appointed to guard their interests and a representative was also appointed to protect the contingent interests of persons unknown, unascertainable or not in being, whose interests may be hereby affected.

The will appoints the Industrial Trust Company as executor. It gives Honora Nolan the testator's home at 44 Beech street, Pawtucket, as long as she shall live, or until her remarriage, and further provides that the upkeep thereof is to be paid out of the trust estate set up by the seventh clause of the will, which is the clause to be construed. This seventh clause reads as follows:

"All the rest, residue and remainder of my estate, of every kind and character of which I shall die seized and possessed, I give, devise and bequeath to said Industrial Trust Company,

TO HAVE AND TO HOLD, IN TRUST, upon the following express terms and conditions, to wit:—

(A) Said trustee shall keep said trust estate invested in good income paying securities, with power to change such investments from time to time, and to sell the whole or any portion of said trust estate as it may deem for the best interests of my estate, and any purchaser from said trustee shall receive good title to the property purchased and shall not be obliged to see the application of the purchase money. The income from said trust estate, and so much of the principal as may be necessary, shall be paid over to the said Honora Nolan, widow of my late son, Joseph P. A. Nolan, for the proper care, support and education of such of the children of my said son as shall be living at the time of my death, and such payments shall continue until said children shall respectively reach the age of twenty-five (25) years, at which time each of said children shall receive his or her propor-

tional share of the entire remaining principal of said trust estate.

(B)   In case of the death or remarriage of my said daughter-in-law, Honora Nolan, or in case for any reason she shall not see fit to occupy the home at 44 Beech Street, then, in such case, said trustee may either sell said property or retain it, as it may deem for the best interests of my said grandchildren; and in case of a sale thereof, said trustee is authorized to give good title to the purchaser, who shall not be required to see to the application of the purchase money. The net proceeds of such sale shall form a portion of my trust estate.

(C)   In case of the death of either of my grandchildren before receiving their respective shares of the principal of said estate, leaving issue living at the time of their death, said trust shall continue for the benefit of such issue, per stirpes, the income of their respective shares to be paid to their legal guardian until such issue shall reach the age of twenty-one (21) years, when their proportional shares of the principal of said trust estate shall be paid to them, and to the survivors of them, per stirpes; and in case all of such issue of my said son shall die before reaching the age of twenty-one (21) years without leaving issue living at such death, then said trust estate shall be divided among my legal heirs under the laws of the State of Rhode Island at present in force; PROVIDED, however, that such division shall in no wise infringe upon, or impair the right of occupation of the property at 44 Beech Street, Pawtucket, Rhode Island, given to the said Honora Nolan by Clause SIXTH of this will so long as she lives and remains unmarried; and PROVIDED, further, that in case the said Honora Nolan continues to occupy said home after the death of all my grandchildren before reaching the age of twenty-one (21) years without leaving issue living at their death, then the said Honora Nolan, so long as she continues personally to occupy said home under the provisions of Clause SIXTH of this will, shall, at her own expense, attend to the upkeep of said premises, including taxes, repairs, insurance, water rates and the like."

The trustee accepted the appointment thereunder and is acting as trustee. During the lifetime of Honora Nolan it paid the income of the trust estate to her. Since her death it has paid the income to Gerald J. Martin as the guardian of Austin J. Nolan and Richard M. Nolan.

The guardian has requested the trustee to pay to him a portion of the trust estate to be used for the education of his wards. The trustee has refused, for the reason that it is in doubt whether the will, and particularly paragraph (A) of the seventh clause, permitted or authorized payment of the principal for the support of said children to any one but Honora Nolan, but the trustee believes that it is necessary that a portion of the trust estate be used for the support and education of the children. Martin testified at the hearing in the superior court that he is otherwise unable to provide for their care, support and education.

The principal of the trust estate amounts to $20,000, which sum includes the Beech street real estate, which is valued at $7000. The average annual net income of the trust for the last five years has been between $1000 and $1100. Austin J. and Richard M. Nolan are the only beneficiaries of the trust at the present time. Austin is slightly over nineteen years of age and Richard is a few months over sixteen years of age. They are the nearest surviving blood relatives of the testator.

We are asked to construe the seventh clause of the will with particular reference to making specific answer to each of the following questions: "(a) May the Trustee, in the present circumstances, pay out any part of the principal of said trust estate for the proper care, support and education of said minor children of Joseph P. A. Nolan? (b) If any part of the principal may be so paid out, should it be paid to the guardian of said minor children or in any other manner?".

What was the intention of the testator in disposing of his property under the seventh clause of his will? That question must be answered by looking at the language which he employed to express his intention. The words which he used will be given their ordinary meaning, unless it is plain that he used them in a technical sense. If there is doubt as to what the words mean in the clause where they appear, reference will be made to other parts of the will for aid in arriving at their true construction. The primary rule in the construction of wills is that the intent of the testator must govern and that such intention is to be found within the four corners of the instrument.

As we read the several paragraphs of the above-quoted clause, it is quite clear to us that the primary intention of the testator was to assure his grandsons, as far as he could accomplish it, sufficient means for their maintenance, education and support until each one reached the age of twenty-five years at which time each was to receive whatever remained of the trust estate. This view is confirmed by reference to other portions of the will where such intention of the testator is likewise manifested. It is true that the trustee is ordered to pay over the income to Honora Nolan and that there is authority in such a case for holding that this is a gift to her and that the rest of the language of the testator is no more than a mere expression of confidence on his part that she will apply it for the education and support of those named. *Biddle's Appeal,* 80 Pa. 258; *Hammond* v. *Neame,* 1 Swan 35; *Bond* v. *Dickerson,* 33 L. T. 221; *Byne* v. *Blackburn,* 26 Beav. 41.

Nevertheless we are of the opinion that, notwithstanding such authority, the intention of the testator here was not to give this income to his daughter-in-law for her own benefit, but to give it to her for the benefit of his grandsons. We therefore construe his language to mean that his grandsons were the true *cestuis que trustent* and that

Honora Nolan was in the nature of a sub-trustee. There is ample authority in the decided cases, if any were needed, to support this view. *Johnson* v. *Johnson,* 215 Mass. 276; *Conover* v. *Fisher,* 36 A. 948 (N. J. Ch.); *Pilcher* v. *Mc-Henry,* 82 Tenn. 77; *Wetherell* v. *Wilson,* 1 *Keen* 80; *Long-more* v. *Elcum,* 2 Y. & Coll. 363; *In re Booth,* 2 Ch. 282, (1894); *In re Yates,* 2 Ch. 363, (1901).

It appears from the evidence taken at the hearing in the superior court, although there is no allegation to that effect in the bill, that Gerald J. Martin is the adoptive father of the testator's grandsons. Does this fact excuse the trustee from the duty of paying out part of the principal of the trust estate for their education and support, in view of the fact that it is the legal duty of the father to support his adopted children? Under the circumstances of the instant case it does not seem to be necessary to consider this question.

It appears here that the adoptive father is admittedly without sufficient means to support and educate his adopted sons and in such a case it has been held that payments may be made out of a trust fund for the benefit of the *cestuis que trustent.* *Pearce* v. *Olney,* 5 R. I. 269; *Williams* v. *Smith,* 10 R. I. 280. The trustee in the instant case has been paying the income of the trust over to Gerald J. Martin as the guardian of his adopted sons since the death of Honora Nolan, and it would seem that the trustee, relying upon *Butler* v. *Butler,* 40 R. I. 425, foresaw no legal obstacle to its doing so. Since the testator's language with reference to the possible need arising for using a portion of the principal is practically the same as that which he employed with reference to the income, we think that, from the point of view of the law, both provisions should be construed similarly.

The next question is how shall the trustee pay over portions of the principal and to whom? As stated above, the

income is now being paid to Gerald J. Martin, as guardian of his adopted sons, and this method would seem to be equally well adapted for making payments of the principal were it not for the fact that the guardianship relation will cease upon the coming of age of each son, whereas the trust does not terminate until each son reaches the age of twenty-five years. The trustee has expressed the view that this court, in answering the above question, "should be largely controlled by the practical aspects of the situation." This may possibly be so, but the guardian *ad litem* argues for the appointment of a subsidiary trustee by the final decree determining this proceeding; the said subsidiary trustee to be authorized to receive from the complainant and to expend the net income and so much of the principal of the trust estate as may be necessary for the proper care, support and education of each minor respondent until each has attained the age of twenty-five years. Counsel appointed by the superior court to protect the interests of certain persons unknown, unascertained or not in being, who may have contingent interests herein, takes the same view and urges the appointment of a subsidiary trustee.

We have carefully weighed the reasons advanced by each side in support of their respective views and we have come to the conclusion that the possibility of legal obstacles arising in the future does not permit us to give to this question the answer urged upon us by the complainant trustee. It seems to us that the effective way to solve any future difficulties would be to have Gerald J. Martin appointed as subsidiary trustee. We assume that, because of the love and affection which he has for these boys as his adopted sons, and the blood ties which he has with them as the children of his deceased sister, the adoptive father will be willing, without compensation, to administer this trust in reasonable compliance with the intention of the testator just as Honora Nolan would have done had she survived.

.For the reasons above stated, we therefore answer question (a) in the affirmative and question (b) in the manner indicated in the paragraph immediately preceding.

On July 14, 1939, the parties may present to this court for approval a form of decree, in accordance with this opinion, to be entered in the superior court.

*Stuart H. Tucker, Huddy & Moulton,* for complainant.

*Henry B. Gardner, Jr.,* Guardian *ad Litem* of Austin J. Nolan *et al.*

*Charles J. McCabe,* Guardian *ad Litem* for certain persons unknown, unascertained, or not in being, who may or may not have contingent interests.