RHODE ISLAND HOSPITAL TRUST COMPANY *et al., Ex'rs., vs.* BOSTON UNIVERSITY *et al.*

JULY 9, 1947.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

BAKER, J. This is a bill in equity brought for the construction of a will. Evidence was submitted in the superior court and when the cause was ready for hearing for the entry of a final decree it was certified to this court for determination under the provisions of general laws 1938, chapter 545, §7.

The bill is brought by the executors of the will of Luella Katharine Leavitt, deceased, late of Newport, Rhode Island. The respondents, being all the parties interested in the question raised by the bill, are the trustees of Boston University, hereinafter referred to as Boston University, Northwestern University, the trustees of the New England Southern Conference of the Methodist Church, called herein the trustees of New England Southern Conference, a group, hereinafter referred to by us as the Savings Bank, namely, the Savings Bank of Newport, Fred W. Johnstone, Harold T. Lowe and William MacLeod, being respectively the headmaster of the Rogers High School in said Newport, the superintendent of schools of that city, and the chairman of its school committee. No minors or contingent interests are involved in the cause. All respondents answered the bill.

It appears that the testatrix died October 1, 1945, leaving a will dated June 13, 1942. By this will, after providing for the payment of all debts and expenses, she made a large number of pecuniary legacies and bequests to individuals

and to charitable and educational institutions. There is, however, after the payment of the legacies, a residuary estate still to be distributed. In the judgment of the parties the clause of the will which requires construction is the ninth and last clause thereof, which reads as follows:

"Ninth: All the rest, residue and remainder of my property, real and personal, wherever situated, I give, bequeath and devise in equal shares to and among the First Four Named Legatees under the Sixth Paragraph of this will as an addition to the respective legacies of each legatee, additional scholarships of the same names to be founded in each case if the share of my residuary estate shall be ample for that purpose, the income from each of said additional scholarships to be awarded in like manner as is provided under the first four paragraphs of said Sixth Paragraph hereof."

The question set out in the bill for our determination is: "What parties are entitled to receive the residuary estate of said Luella Katharine Leavitt?"

In order to properly understand and pass upon this question it is necessary for us to refer to portions of the sixth clause of the will which are as follows:

"Sixth: I give and bequeath the following legacies or gifts to the following institutions:

"I provide that in the event there be not in my estate sufficient money applicable to the payment of the legacies given under this clause of my will to pay all such legacies in full, then those numbered (6) for the Rogers High School Scholarship and numbered (9) for the Peoples Library shall have first priority as to payment in full over all the other legacies given under this clause of my will and those numbered (1), (2), (3), (4), and (5) shall have second priority as to payment in full over all of the other legacies other than those numbered (6) and (9) given under this clause of my will, and in case said money shall be insufficient to pay in full said legacies numbered (6) and (9) and said legacies numbered (1), (2), (3), (4), and (5), then said legacies numbered (6) and (9) shall be paid in full and the said legacies numbered (1) to (5), both inclusive, shall abate pro rata.

"(1) I give and bequeath to the Boston University School Of Theology, or the Trustees thereof, the sum of Ten Thousand Dollars ($10,000.) to found and establish a scholarship in said School of Theology, to be named the 'Dudley Prescott Leavitt Scholarship', the income to be used by a person studying for the ministry in said School and to be awarded by the Trustees, or other governing body of said School, having charge of scholarships.

"(2) I give and bequeath to the College of Liberal Arts Of Boston University, the sum of Five Thousand Dollars ($5,000.) to found and establish a scholarship in said School, to be named the 'Elvira Clark Leavitt Scholarships', the income to be used by students of said School and to be awarded by the Trustees, or other governing body of said School, having charge of scholarships."

The paragraphs in this clause numbered (3) and (4) are in the exact language of paragraph (2), except that the scholarships created by the third and fourth paragraphs are to be named respectively the Mary Frances Leavitt scholarship and the Blanche Leavitt scholarship. Paragraphs (5), (6) and (7) of said sixth clause are as follows:

"(5) I give and bequeath to the Northwestern University, of Evanston, Illinois, the sum of Fifteen Thousand Dollars ($15,000.) to found and establish a scholarship or scholarships therein, each such scholarship to be named the 'Luella Clark Scholarship', the income from each such scholarship to be awarded to any student therein by the Trustees, or other governing body of said University, having charge of scholarships.

"(6) I direct my Executors to place on deposit, either in the Savings Bank of Newport, in said Newport, or in such other institution as they may determine, the sum of Five Thousand Dollars ($5,000.), said fund to remain on deposit and to be used for the founding of a scholarship in the Rogers High School, in said Newport, to be known as the 'Mary Frances Leavitt and Blanche Leavitt Scholarship', the income to be awarded, from time to time, by the Superintendent of Schools, the Headmaster of said High School and the Chairman of the School Committee of the City of

Newport, for the time being, and their respective successors in office, to worthy girl graduates of said Rogers High School who have shown special aptitude for the study of science, history or mathematics and who need help in the pursuit of higher academic education.

"(7) I give and bequeath to the Trustees Of The New England Southern Conference of the Methodist Episcopal Church, and to their successors and assigns, the sum of Five Thousand Dollars ($5,000.) to be known as the 'Dudley Prescott Leavitt Fund', to be held by them and the income to be used for conference claimants or the superannuated members of the Conference."

Then follow seven additional numbered paragraphs providing for the giving of legacies to different charitable bodies, but none of these gifts involve in any way the creation of scholarships.

In construing the pertinent parts of the testatrix's will it is settled that we must, if possible, determine from the language used therein, and from other parts of the will if necessary, the primary and dominant intent of the testatrix, and give it effect unless it be contrary to established law. This is a fundamental rule. *Industrial Trust Co.* v. *Nolan*, 63 R. I. 156; *Washington Trust Co.* v. *Arnold*, 69 R. I. 121. In the present cause difficulty arises when it is attempted to apply and carry out the provisions of the ninth clause in their relation to certain portions of the sixth clause of the will. Some ambiguities and inconsistencies apparently exist when the two clauses are considered together, and we should if possible reconcile these differences and give reasonable effect to both clauses in attempting to arrive at the controlling intent of the testatrix.

Testimony introduced to throw light on this situation revealed that the true corporate name of Boston University is "Trustees of Boston University", but that there are no legal entities known as the Boston University School of Theology or the College of Liberal Arts of Boston University. That university is made up of thirteen separate

departments of which the School of Theology and the College of Liberal Arts are two. Each of these departments has its own dean, registrar, secretary, faculty, students and tuition rates, and carries on its own distinct functional life. Each department, however, is a part of the university and is responsible to and, in the final analysis, is controlled by its board of trustees.

It appeared from other testimony that the family of the testatrix had an interest in Boston University. Her father, Dudley Prescott Leavitt, was a Methodist clergyman who received his final theological training at an institution which later, in 1871, became the Boston University School of Theology. Her sister, Mary Frances Leavitt, graduated from the Boston University College of Liberal Arts in 1900, and the testatrix herself studied there for a short time in 1922-1923. The evidence also showed that her sisters, Mary Frances Leavitt and Blanche Leavitt, were teachers in the Rogers High School, Newport, for upwards of twenty years.

It is the contention of Boston University that it is entitled to the entire residue of the testatrix's estate, one fourth for its School of Theology and three fourths for its College of Liberal Arts, for additional scholarships of the same names as those already set up by the first four numbered paragraphs of the sixth clause of testatrix's will. Each of the other respondents, however, maintains that it is entitled to a one-fourth part of said residue. This is on the basis that the deposit in the Savings Bank of Newport, provided for in the sixth paragraph of the sixth clause of the will, the income from which is to be awarded by respondents Johnstone, Lowe and MacLeod in their aforesaid capacities, constitutes one legacy or fund.

An examination of the ninth or residuary clause of the will shows that is divided roughly into three parts, each of which is of importance in revealing the dominant intent of the testatrix in respect to the disposition of her residuary estate, and to each of which we should give effect as far

as reasonably possible. First, the residue is to be divided equally to and among the first four named legatees under the sixth clause of the will. Second, this gift is to be an addition to the respective legacies given each such legatee, and the purpose of the gift is to found additional scholarships of the same names in each instance. Clearly, therefore, the testatrix's primary intent here is to set up additional scholarships, but in the same names as already provided for. Third, the income from such additional scholarships is to be awarded in the same manner as is provided under the first four paragraphs of said sixth clause.

In construing a will it is the general rule that technical words used therein are to be given their ordinary meaning and effect unless a clearly different intention is indicated. *Starrett* v. *Botsford,* 64 R. I. 1. This will was apparently drawn by an attorney. The provisions of the ninth or residuary clause require us to examine the sixth clause of that instrument in order to determine the first four named legatees therein. The answer to this question is not free from difficulty. Viewed from the strict legal meaning of the word "legatee", that is, one who takes a legacy as an individual, or as a corporate entity, or one or more who take as trustees, it would appear that the first four named legatees in that clause are Boston University, which encompasses the first four numbered paragraphs of that clause, Northwestern University, the deposit in the Savings Bank of Newport, which in effect is a trust without a definitely named trustee, but which will not fail for that reason, and the trustees of the New England Southern Conference.

A further consideration of these two clauses in our opinion makes it clear that under no reasonable construction of the pertinent parts of the will did the testatrix intend that the trustees of the New England Southern Conference should take any part of her residuary estate. It is plain from the ninth clause that her primary and dominant intent respecting her residuary estate was that it should be used for

additional scholarships, and that the income from such scholarships should be awarded in the same manner as was provided under the first four paragraphs of the sixth clause. In this connection we consider that the testatrix, in referring to these paragraphs of the sixth clause, meant the first four numbered paragraphs thereof, and did not include in that description the opening and unnumbered paragraph.

It is, in our judgment, impossible to carry out the above portions of the ninth clause in so far as the trustees of the New England Southern Conference are concerned. The gift to them, under the seventh paragraph of the sixth clause, did not involve scholarships in any form, but the income only was to be used for conference claimants or superannuated members of the conference. The argument made by such trustees that any additional money they might receive from the testatrix's residuary estate could be validly used by means of an application by the court of the *cy pres* doctrine does not appear to us to be sound. We cannot disregard so completely the pertinent parts of the ninth clause in connection with the primary intent of the testatrix.

The above-mentioned impossibility of carrying out the provisions of that clause as to the trustees of the New England Southern Conference lends support to the contention of Boston University that the testatrix did not really intend the first four named legatees, using that term in its strict legal sense, to receive her residuary estate, but that she in fact intended such residue in said ninth clause to go to the named recipients of the first four legacies in clause sixth, apparently considering in her own mind that those four gifts were being made to separate legal entities. We find that the trustees of the New England Southern Conference were not intended by the testatrix to take any part of her residuary estate, and therefore that they are not entitled to receive any part thereof.

As we have pointed out, none of the paragraphs of the sixth clause following the one numbered (7) contain any

reference to scholarships and, the trustees of the New England Southern Conference having been eliminated, it may be noted that there apparently remain available for consideration only three named legatees in that clause if we construe the word legatees strictly. None of the parties, however, argue for a construction of the will which would bring about an intestacy as to one fourth of the testatrix's residuary estate. In the circumstances appearing herein such a construction would not be looked upon with favor by the law; and furthermore it is perfectly clear that the testatrix never intended any part of her residue to pass as intestate property.

In this situation the respondents Northwestern University and the Savings Bank themselves argue, in substance, in favor of some relaxation from the strictly legal construction of the term "First Four Named Legatees" as used in the ninth clause of the will. They suggest that the Boston University School of Theology and the College of Liberal Arts of Boston University, although not actually legal entities, be considered as two legatees and that they themselves be held to be the other two legatees, thereby providing for the distribution of the entire residuary estate by quarters and thus preventing any intestacy. This construction meets the requirement of the ninth clause respecting an addition to the respective legacies of each legatee for the purpose of establishing additional scholarships of the same names if feasible. However, such construction does not, taking the whole clause into consideration, adapt itself fully to the application of the provision in that clause that the income from such additional scholarships be awarded in like manner as is provided under the first four paragraphs thereof.

The position advanced by Boston University is that, taking the entire will and all circumstances into consideration, the testatrix clearly intended her entire residue to pass to it for the purpose of increasing the legacies and scholarships set out in the first four numbered paragraphs

of the sixth clause, and that, therefore, the term first four named legatees should not be construed narrowly in its strict legal sense. That university also contends that a broad and liberal construction of such term permits all parts of the ninth clause to be more fully and completely carried out than does any other suggested construction; and that it corrects the apparent mistake which the testatrix made in assuming that the Boston University School of Theology and the College of Liberal Arts of Boston University were separate legal entities, and constituted the first four named, but not necessarily different, legatees.

We have considered the contentions made by the respondents and have come to the conclusion that, considering the will as a whole in an attempt to ascertain the testatrix's intentions, the view advanced by the respondent Boston University is the correct one. When the testatrix used familiar legal words it is the general rule that she must be presumed to have used them in their ordinary meaning. However, if the contrary clearly appears, the rule is not applicable and, in our judgment, we have that situation in the instant will. In order to carry out the plain intent of the testatrix the term first four named legatees cannot be given its ordinary legal meaning but, in the circumstances, must be more broadly construed.

It is our opinion that it was the intention of the testatrix that her residuary estate, if any, be divided equally, for certain specific purposes, among the first four *named* legatees in the sixth clause, meaning thereby the so-called or assumed legatees designated in the first four numbered paragraphs thereof. Actually these legatees were not strict legal entities but were separate departments of Boston University which, in the circumstances, should itself take the residue for them, in order to carry out the testatrix's intent. This disposition of the residue will give the fullest effect possible to all the provisions of the ninth clause of the will, especially in its relation to the sixth clause.

The above view, in our opinion, receives support from certain facts in evidence which tend to show why the testatrix was interested in Boston University. Members of her family had been more or less closely associated and connected with that institution, and in her will she had established scholarships there in the names of several of them. Considering these provisions of the will it seems reasonable to believe she desired that such residuary estate as she might leave, after the payment of numerous bequests and legacies, be used to create additional scholarships at Boston University in the names of these same members of her family.

In coming to this conclusion we have not overlooked the argument made by the Savings Bank of Newport, in substance, that the will shows that, because of language used in the opening or unnumbered portion of the sixth clause, it was the intent and desire of the testatrix that such bank be favored and given priority. This language in effect provided that the Rogers High School, represented by the bank, and another legatee should have first priority if there was not sufficient money in the estate to pay in full the legacies given under such clause.

In the existing situation, however, we are of the opinion that the above provision has no bearing on the decision of the question before us. The contingency mentioned in that clause never arose. The legacies were all paid in full, the Savings Bank of Newport has received the deposit on behalf of the Rogers High School, and the testatrix's desire in that respect has been fully satisfied. The testatrix might well have had a clear and definite intent in respect to priority in the payment of legacies if her estate was insufficient to pay them in full, but such intent applied only to that situation and cannot properly be carried over into another clause of the will when the estate is large enough to pay all legacies fully and an entirely different question is before the court.

In answer to the question presented by the parties we

find that the trustees of Boston University are entitled to receive the entire residuary estate of the testatrix, one quarter thereof on behalf of Boston University School of Theology and three quarters thereof on behalf of the College of Liberal Arts of Boston University, for the specific uses and purposes, however, which the testatrix has set out in the sixth and ninth clauses of her will.

On July 14, 1947, the parties may present to this court a form of decree, in accordance with this opinion, to be entered in the superior court.

Moss, J., did not participate in the decision.

*Sheffield & Harvey, W. Ward Harvey,* for complainants.

*Francis I. McCanna,* for Trustees of Boston University.

*Claude R. Branch, Matthew W. Goring,* for Northwestern University.

*Edwin J. Tetlow, Edwin B. Tetlow,* for Trustees of the New England Southern Conference of the Methodist Church.

*William MacLeod,* for Fred W. Johnstone, Harold T. Lowe and William MacLeod respectively the Headmaster of Rogers High School, Superintendent of Schools, and Chairman of the School Committee, Newport, and the Savings Bank of Newport, depository of Rogers High School scholarship.